2002-NMCA-048

45 P.3d 73

**Ruben COLLADO, Plaintiff–Appellee,**

v.

**CITY OF ALBUQUERQUE,
Defendant–Appellant.**

**No. 21,911.**

Court of Appeals of New Mexico.

March 13, 2002.

Ira Bolnick, Albuquerque, NM, for Appellee.

Robert M. White, City Attorney, Victor E. Valdez, Kathryn Levy, Assistant City Attorneys, Albuquerque, NM, for Appellant.

## OPINION

BOSSON, Chief Judge.

{1} The City of Albuquerque appeals from a judgment against it ordering that Plaintiff, a Lieutenant in the Albuquerque Fire Department, be promoted to the rank of Captain and receive retroactive back pay and other benefits. The City argues that the trial court erred in finding that the City breached its employment contract with Plaintiff and awarding equitable relief in the form of retroactive promotion and back pay. We affirm the judgment of the trial court.

## BACKGROUND

{2} The City's Merit System Ordinance requires that the selection procedures for hiring, promoting, and discharging of employees must be "valid, fair, sound and free of considerations, such as race, ethnic back-

ground, sex, age, political affiliation and/or personal bias." *City of Albuquerque Personnel Rules and Regulations* § 205. The merit system uses written tests, oral interviews, and performance examinations to determine an employee's eligibility for promotion. *Id.* § 201. The City's personnel rules provide that "careful and reasonable measures will be taken to insure fair administration of examinations." *Id.* § 202.1.

{3} In 1993, Plaintiff was one of fifty-one lieutenants who competed for promotion to Captain. The promotion process had two components: a written examination given in July, and an "assessment examination" given a few weeks later. This second component included an oral interview and a performance examination. Only those candidates who received a sufficiently high score on the written examination were eligible for the assessment process. The written test was offered at two different times. Plaintiff attended the first session.

{4} During the first session of the written examination, a power failure caused the lights to go out for approximately three minutes and to flicker a couple of times thereafter. According to the testimony, the power outage resulted in a significant disruption of the testing process. Despite being instructed to stop working on their tests and remain in their seats, not all the candidates obeyed. One candidate reportedly got up from his seat and left the room. Other candidates seated near an open doorway apparently had sufficient light to continue working on their tests. Some of the candidates talked to one another during the blackout. Several candidates, including Plaintiff, testified that these events had an adverse effect on their ability to concentrate during the examination.

{5} After the lighting was restored, the candidates were given an extra five minutes to compensate for the disruption. At the end of the written examination period, one candidate was observed continuing to work on his test for an additional minute or two. Ultimately, that candidate was ranked number one on the promotion list.

{6} The second session of the written examination proceeded without incident. Overall, those candidates were more successful in proceeding to the assessment process. Although 77% of those in the second session scored high enough to become eligible for the assessment process, only 58% of those in the first session performed well enough to qualify. Several candidates complained to the City about the written examination, and recommended that the City reject these results and offer the test again under fairer conditions. The City refused.

{7} The assessment process had its own problems. Security was lax; participants were not monitored between exercises and were able to speak with one another and listen from the hallway during the assessment process. Some candidates allegedly had pre-existing relationships with one or more of the assessors. One exercise required the candidates to describe how they would respond to reports of smoke in the Bernalillo County Detention Center (BCDC), a building that was familiar to some, but not all, of the candidates. The same candidate who scored number one on the promotion list had previously worked at BCDC and would have been familiar with that building.

{8} Dr. Hornick, a public safety testing expert, testified that the disruptions in the first session of the written examination disadvantaged those candidates. It was his opinion that, after the power outage, the test should have been stopped and administered again at a later date. Dr. Hornick also emphasized the importance of appropriately monitoring candidates to avoid giving an unfair advantage to some. He testified that it was "uncommon" for an assessment exercise to concern a building that might be familiar to only some of the candidates. He also alluded to the appearance of impropriety when an assessor is personally familiar with a particular candidate. Dr. Hornick concluded that he had reviewed the test administration guidelines and found them "woefully inadequate."

{9} Plaintiff was one of those who claimed injury from the testing process. Having attended the first session of the written examination, Plaintiff was affected by the power outage. Due to a scoring error on the written exam, Plaintiff's name was wrongly omit-

ted from the initial list of those eligible for the assessment process. Believing he had failed the written test, Plaintiff discontinued his preparations. By the time the City corrected its mistake and notified Plaintiff that he was eligible for the assessment process, he had only two days to study.

{10} Following the written examination and the assessment process, those candidates whose cumulative scores were within the top 25% were declared eligible for promotion. The cutoff score was 62.94%. Plaintiff's cumulative score was 62.83%, 0.11% below the cutoff point, which excluded him from the promotion list. Dr. Hornick found minor rounding errors in the scoring process, which, according to his testimony, could have affected how Plaintiff's cumulative score compared in relation to the lowest ranking candidate who made the promotion list.

{11} In 1994, Plaintiff took another promotion exam, but did not pass. He testified that he had "[lost] faith in the [promotion] process," and that his disappointment with the process had lessened his motivation to prepare for that subsequent examination. He did not take any additional exams for promotion.

{12} Plaintiff and other members of the Firefighter's Union protested the 1993 promotion process in September of that year. In November 1993, Plaintiff and another candidate filed a complaint with the Albuquerque Labor Management Relations Board (Labor Board). In May 1996, the Labor Board determined that the testing process had been unfair and ordered Plaintiff placed on the promotion list. The City challenged that ruling, and in April 1997 the trial court overturned the Labor Board's decision on jurisdictional grounds. In July 1996, about a month and a half after the City filed its trial court challenge of the Labor Board ruling, Plaintiff filed this lawsuit, alleging that the many irregularities in the promotion process constituted a breach of the City's employment contract with Plaintiff.

{13} Following a bench trial in June 2000, the trial court held that the City's Merit System Ordinance, together with its personnel rules, constituted an employment contract between Plaintiff and the City, which

the City breached by failing to provide a "valid, fair and sound" testing process. The court found this breach material and concluded that it caused Plaintiff to lose a legitimate opportunity for promotion. As a remedy for the breach, the court ordered the City to promote Plaintiff to Captain retroactively with appropriate back pay and benefits.

## DISCUSSION

### Breach of Contract

{14} The City does not dispute that it had an employment contract with Plaintiff. *See, e.g., Garcia v. Middle Rio Grande Conservancy Dist.*, 1996–NMSC–029, ¶¶ 10–11, 121 N.M. 728, 918 P.2d 7 (upholding finding of implied contract where personnel manual controlled employer-employee relationship and created reasonable. expectation that employer would conform to outlined procedures); *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989) (same). The City argues only that it did not breach that contract.

{15} Breach of contract is a question of fact that we review under a substantial evidence standard. *See Wisznia v. N.M. Human Servs. Dep't*, 1998–NMSC–011, ¶ 10, 125 N.M. 140, 958 P.2d 98 (applying substantial evidence standard where the plaintiff had brought a claim for breach of contract); *compare Nearburg v. Yates Petroleum Corp.*, 1997–NMCA–069, ¶¶ 7–8, 123 N.M. 526, 943 P.2d 560 (stating that questions regarding contract ambiguity and interpretation of ambiguous contract terms are to be reviewed de novo). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Salgado*, 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (quoting *State v. Baca*, 1997–NMSC–059, ¶ 14, 124 N.M. 333, 950 P.2d 776).

{16} In denying its breach of contract, the City argues that all candidates who participated in the first session of the written examination were subjected to the same conditions, and if those conditions were unfair to Plaintiff, then they must have been unfair to all. If that was the case, the City argues, then the test results should have been voided for all participants and not just Plaintiff.

Because the court voided only Plaintiff's test results and not those of the other participants, the City characterizes the court's conclusion as "chang[ing] contract language for the benefit of one party to the detriment of another." *Nearburg*, 1997–NMCA–069, ¶ 23, 123 N.M. 526, 943 P.2d 560.

{17} This argument does not persuade us. The trial court found multiple inconsistencies in the administration of the promotion process which caused harm to Plaintiff. The court's findings do not speak to whether that process was unfair or prejudicial to other candidates who were not parties to this action. We know of no legal authority that would require a court to make findings and award relief with regard to persons *not* parties before the court. The City has not referred us to any such authority. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding issues unsupported by cited authority will not be reviewed on appeal).

{18} The City argues that because the court did not invalidate the test results as to these other, unnamed participants, then, implicitly, the court must have found the test valid and fair as to them. We reject any such inference. The trial court's mission was limited to deciding the case before it and the rights of the parties before it. The court did so in clearly stated findings and conclusions regarding how this testing process affected Plaintiff. Any inference beyond that, especially an inference that would run contrary to the court's own conclusions, is unwarranted.

{19} Our task on appeal is to determine whether the trial court's judgment and findings in favor of Plaintiff are supported by substantial evidence, not whether the trial court could have reached a different conclusion that might also find support in the record. *In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 15, 121 N.M. 562, 915 P.2d 318. We are satisfied that the evidence supports the court's decision.

{20} Plaintiff presented evidence, including expert testimony, that the City failed to provide a fair promotional process due to multiple irregularities in the testing process. There was evidence that these irregularities

benefitted some candidates while disadvantaging others, including Plaintiff, who was additionally prejudiced by the initial misscoring of his written test. The court could reasonably have inferred from the evidence that Plaintiff, having so narrowly missed the cutoff, was likely harmed by the City's breach. Therefore, the court had substantial evidence in the record to conclude that the City committed a material breach of contract, which resulted, in whole or in part, in Plaintiff's failure to make the 1993 promotion list. *See, e.g., Famiglietta v. Ivie–Miller Enters.*, 1998–NMCA–155, ¶ 17, 126 N.M. 69, 966 P.2d 777 (describing a material breach as the " 'failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract' " (quoting *Horton v. Horton*, 254 Va. 111, 487 S.E.2d 200, 204 (1997))).

**Retroactive Promotion**

{21} After finding a material breach of contract, the court ordered equitable relief in the form of retroactive promotion. We review a trial court's decision to grant or deny equitable relief for abuse of discretion. *Nearburg*, 1997–NMCA–069, ¶ 9, 123 N.M. 526, 943 P.2d 560. " 'An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason.' " *Amkco, Ltd. v. Welborn*, 2001–NMSC–012, ¶ 8, 130 N.M. 155, 21 P.3d 24 (quoting *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995)).

{22} It is hardly outside the norm to conclude that equitable relief is the most appropriate way to make an employee whole. For example, equitable relief is commonly used to remedy the effects of employment discrimination. *See, e.g., Bennun v. Rutgers State Univ.*, 941 F.2d 154, 176 (3d Cir.1991) (upholding promotion to full professor with retroactive back pay when the position was wrongfully denied because of a Title VII violation); *see also Butler v. Coral Volkswagen, Inc.*, 629 F.Supp. 1034, 1041 (S.D.Fla.

1986) (reinstating terminated employee who was a victim of racial discrimination). *See generally* Roy L. Brooks, *A Roadmap Through Title VII's Procedural and Remedial Labyrinth,* 24 Sw. U.L.Rev. 511, 520–26 (1995) (describing the broad range of Title VII remedies, such as reinstatement and hiring, with or without back pay, and other forms of equitable relief); Robert Charles Johnson, *Partnership and Title VII Remedies: Price Waterhouse Cracks the Glass Ceiling,* 1991 Wis. L.Rev. 787, 823 (stating Title VII remedial policy goals are well-served by equitable awards to high-level positions).

{23} Equitable relief is not confined to employment discrimination. Courts have also used equitable relief to award specific performance in the form of reinstatement to remedy a breach of contract. *See, e.g., Bali v. Christiana Care Health Servs., Inc.,* 1999 WL 413303 at *7 (Del.Ch. Jun.16, 1999) [No. 16433, 1999 Del. Ch. LEXIS 128, at *25] (ordering wrongly demoted surgical resident be granted specific performance to remedy hospital's breach of contract); *Stafford v. Elec. Data Sys. Corp.,* 749 F.Supp. 781, 784 (E.D.Mich.1990) (stating "[r]einstatement is among the equitable remedies that a trial court, in its discretion, may order as relief in a wrongful discharge/breach of contract action"); *see also City of Albuquerque v. Ryon,* 106 N.M. 600, 603, 747 P.2d 246, 249 (1987) (holding a writ of mandamus was appropriate to compel the city's compliance with an administrative order, which provided for reinstatement with back pay for wrongfully terminated employee).

{24} The City argues that the court's equitable award of retroactive promotion was inappropriate in this case because monetary damages could have adequately compensated Plaintiff. Based on our review of the record, it is doubtful the City ever made this argument to the lower court. However, even assuming that the City preserved the argument, Plaintiff argues persuasively that it would have been too difficult and too speculative to calculate an adequate figure to compensate Plaintiff for his entire loss. Plaintiff lost not only wages, but various kinds of fringe benefits as well. His loss extended into the future; namely, his lost opportunity for additional increases and benefits that might have come his way if he had been promoted in due course. *See Am. Ass'n of Univ. Professors v. Bloomfield Coll.,* 129 N.J.Super. 249, 322 A.2d 846, 859 (Ct. Ch. Div.1974) (ordering the reinstatement of employees, where "the uncertainties involved in ascertaining damages for breach of a contract of indefinite duration" left employees with an inadequate remedy at law), *aff'd,* 136 N.J.Super. 442, 346 A.2d 615 (Ct.App.Div. 1975); *Sasser v. Averitt Express, Inc.,* 839 S.W.2d 422, 432 (Tenn.Ct.App.1992) (stating reinstatement with back pay involves the least amount of uncertainty, "[b]ecause of the inherently speculative nature of front pay awards, [and] recogniz[ing] reinstatement as the preferred remedy in cases involving discharged employees"). We also recognize intangible aspects of promotion, such as status and prestige, that can be difficult to quantify. All things considered, the trial court could reasonably have concluded that one, comprehensive award of monetary damages would not make Plaintiff whole.

{25} The City also argues that the trial court "rewrote" the contract by awarding Plaintiff a promotion, because the contract terms did not guarantee promotion, only a fair testing process. The City contends that, if it breached the contract at all, it caused at most a flawed examination process, which the City cured by later providing fair promotional opportunities for Plaintiff. According to the City, the trial court placed Plaintiff in a *better* position by promoting him than he would have been in if there had been no breach. *See Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.,* 106 N.M. 19, 20, 738 P.2d 513, 514 (1987) (stating the plaintiff had the right to what she could have reasonably expected had there been no breach of contract).

{26} We are not persuaded. The City breached its contract by failing to provide a fair 1993 promotional process, resulting in Plaintiff losing the opportunity to be placed on the 1993 promotion list. The City merit system requires a candidate to pass only one set of tests to be eligible for promotion-a candidate is not normally expected to dupli-

cate a passing result at some later date. The opportunity to take subsequent promotional examinations, whether fair or unfair, did not place Plaintiff in the same position he would have been in 1993, when the City denied him his contractual right to compete fairly for that promotion list. *See id.*

{27} Under these circumstances, the trial court could reasonably have determined that Plaintiff could not be made whole without an award of equitable relief. *See Amkco, Ltd.,* 2001–NMSC–012, ¶ 8, 130 N.M. 155, 21 P.3d 24. In ordering equitable relief, "[a] trial court may create broad equitable remedies to achieve substantial justice between the parties and bring an end to the litigation." *Smith v. McKee,* 116 N.M. 34, 37, 859 P.2d 1061, 1064 (1993). We also note from the record that this is not the first time the City has been ordered by a court to create a vacancy for an employee prejudiced by an unfair promotion process.

{28} In affirming the court's award of equitable relief under the facts and circumstances of this case, we acknowledge potential policy concerns that may arise from granting specific performance of personal service contracts. Courts do not want to become entangled in the supervision of day-to-day relations between the parties. *Bali,* 1999 WL 413303, at *4 [No. 16433, 1999 Del. Ch. LEXIS 128, at *9] (ordering promotion where the programmatic nature of the relationship and the existence of an established disciplinary process could lessen the court's entanglement). Personal service contracts may depend on maintaining a cooperative and trusting relationship between the parties, which can be difficult when an employer is compelled to hire or retain an employee against its will. *Id.* The City also argues that such relief lacks mutuality of remedy and obligation because the employee could not be ordered to continue working against his will. *See City of Riviera Beach v. Barber,* 764 So.2d 601, 602 (Fla.Dist.Ct.App.1998) (reversing retroactive promotion of police officer and holding specific performance not appropriate for the breach of an employment contract because it lacks mutuality of remedy).

{29} We acknowledge that reinstatement or promotion may not be the appropriate remedy in every case. However, the converse is equally true, and such relief may be most appropriate in a given case. *See, e.g., Bennun,* 941 F.2d at 157; *Bali,* 1999 WL 413303, at *3 [No. 16433, 1999 Del. Ch. LEXIS 128, at *16]. The case before us presents such an instance. Accordingly, we hold that the trial court did not abuse its discretion by granting Plaintiff a retroactive promotion.

## Back Pay: Mitigation of Damages

{30} The City argues that the trial court erred in awarding back pay because Plaintiff did not use " 'reasonable diligence' to mitigate damages"; namely, he did not continue taking promotional examinations. *Elephant Butte Resort Marina, Inc. v. Wooldridge,* 102 N.M. 286, 292, 694 P.2d 1351, 1357 (1985) (quoting *Pillsbury v. Blumenthal,* 58 N.M. 422, 428, 272 P.2d 326, 330 (1954)). According to the City, it was this failure to continue taking subsequent examinations that caused Plaintiff his lost wages and benefits.

{31} We assume, without deciding, that Plaintiff had a duty to mitigate in this case. However, the City had the burden of persuasion. "Mitigation of damages is an affirmative defense, and its burden of proof is entirely on the contract breaker." *Bd. of Educ. v. Jennings,* 102 N.M. 762, 764, 701 P.2d 361, 363 (1985); *accord McGinnis v. Honeywell, Inc.,* 110 N.M. 1, 7, 791 P.2d 452, 458 (1990). The trial court could reasonably have concluded that the City failed to prove that its subsequent examination opportunities were "valid, fair, [and] sound" as required by the terms of its employment contract with Plaintiff. In fact, there may have been irregularities associated with subsequent examinations. The 1994 promotion process involved only a written test without an assessment process, and the 1999 test had to be rejected because of problems with its administration. Accordingly, based on this record, the trial court was not compelled to conclude, as a matter of law, that the City provided adequate opportunities for Plaintiff to mitigate his damages. *See McGinnis,* 110 N.M. at 7–8, 791 P.2d at 458–59 (holding an employer, who breached an employment contract by wrongfully discharging an employee, was not entitled to a reduction of damages

where it failed to prove by substantial evidence that employee's damages would be alleviated by future employment opportunities).

## Laches

 {32} "The doctrine of laches prevents litigation of a stale claim where the claim should have been brought at an earlier time and the delay has worked to the prejudice of the party resisting the claim." *Garcia v. Garcia*, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991). There are four elements necessary to establish laches: (1) conduct by defendant giving rise to the situation for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which the suit is based; and (4) injury or prejudice to the defendant in the event that the relief is accorded to plaintiff or the suit is not held to be barred. *City of Raton v. Vermejo Conservancy Dist.*, 101 N.M. 95, 100–01, 678 P.2d 1170, 1175–76 (1984). "The decision to apply laches is left to the sound discretion of the trial court which we review only for an abuse of discretion." *Skaggs v. Conoco, Inc.*, 1998–NMCA–061, ¶ 13, 125 N.M. 97, 957 P.2d 526.

{33} Plaintiff presented evidence that he had been steadily pursuing this matter since 1993, and that the City was well aware of Plaintiff's position. Plaintiff and his labor union protested the promotional process in September 1993. Plaintiff filed a complaint with the Labor Board later that year, alerting the City that he intended to assert his rights in the matter. In 1996, shortly after the City challenged the Labor Board's ruling on jurisdictional grounds, Plaintiff filed this lawsuit.

{34} Based on this record, the court could reasonably have concluded that Plaintiff did not sit on his hands watching his rights grow stale. To the contrary, Plaintiff appears to have pursued his rights diligently, even if his first attempt proved unsuccessful. The court was well within its discretion in concluding

that Plaintiff's claim was not barred by laches.

## CONCLUSION

{35} We affirm the judgment of the trial court.

{36} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.