2004-NMCA-063

92 P.3d 53

**ASPEN LANDSCAPING, INC., Plaintiff/Appellant/Cross–Appellee,**

v.

**LONGFORD HOMES OF NEW MEXICO, INC., Longford at Albuquerque, Ltd. Partnership, and Longford at Paradise Skies, Ltd. Partnership, Defendants/Appellees/Cross–Appellants.**

**No. 23,304.**

Court of Appeals of New Mexico.

April 7, 2004.

Certiorari Denied, No. 28,636, May 18, 2004.

Gordon H. Rowe III, The Rowe Law Firm, P.C., Jane Good Rowe, Albuquerque, NM, for Appellant.

Steven S. Scholl, Dixon, Scholl & Bailey, P.A., Albuquerque, NM, for Appellees.

## OPINION

CASTILLO, Judge.

{1} Plaintiff Aspen Landscaping, Inc., (Aspen) appeals, and Defendants Longford Homes of New Mexico, Inc., Longford at Albuquerque, a limited partnership, and Longford at Paradise Skies, a limited partnership, (collectively Longford) cross-appeal from a judgment awarding Aspen $27,534.14, plus prejudgment interest, and denying the parties' motions for attorney fees, costs, and expenses of litigation. We affirm.

{2} Aspen raises four issues on appeal, and Longford raises three issues in its cross-appeal. We have consolidated and reordered the issues for the convenience of the reader. We hold that (1) the trial court did not abuse its discretion by denying Aspen's untimely motion for a jury trial, (2) Longford's reference to its 1999 offer of judgment in its proposed findings and conclusions was not improper, (3) the trial court correctly interpreted the contract at issue, (4) the trial court did not abuse its discretion in determining that neither side was the prevailing party in the litigation, and (5) the trial court properly awarded Aspen prejudgment interest on the amount due under the contract.

## I. BACKGROUND

{3} Aspen is a landscaping contractor in Albuquerque. Longford Homes of New Mexico, Inc., is a New Mexico corporation that is licensed as a general contractor in New Mexico. It is also the general partner in three limited partnerships, which are the developers of residential subdivisions in Albuquerque known as Crystal Ridge, Mountain View, and Paradise Skies. Two of the limited partnerships are defendants in this case: Longford at Albuquerque and Longford at Paradise Skies.

{4} Aspen had contracts with the Longford entities for the construction of retaining walls in Crystal Ridge, Mountain View, and Paradise Skies. Before October 1998, Aspen's work for Longford had been to construct block retaining walls. The contracts signed in late 1998 required Aspen to construct retaining walls of concrete block and railroad ties. Aspen began work under those contracts in late 1998.

{5} On or about February 2, 1999, John Murtagh came to Albuquerque. He is the president of Longford Homes of New Mexico, Inc., and owner of all its stock. During his stay, John Murtagh and other Longford people went to Crystal Ridge and Paradise Skies to inspect the progress of the work at those subdivisions. John Murtagh was very unhappy with the railroad tie retaining walls at both subdivisions. On that date, John Murtagh told Chris Murtagh, the head of the Albuquerque operation, to get rid of the contractor. On February 2, 1999, Longford sent Aspen a letter telling Aspen to cease work immediately at Crystal Ridge, Mountain View, and Paradise Skies. Each side tells a somewhat different story concerning the events from February 2, 1999, until March 30, 1999. It is undisputed, however, that on March 30, 1999, Longford sent Aspen a letter terminating the contracts between Longford and Aspen and asking for a summary and bill for the work in progress at the time. At that time, Aspen was owed $27,534.14 for materials and labor already provided. We refer to this as the Work in Progress, or WIP, amount.

{6} On May 20, 1999, Aspen filed suit against Longford—seeking damages, including punitive damages, for breach of contract. Within days, Longford offered to pay Aspen the WIP amount, plus interest, and Aspen

refused the offer. Longford filed a counter-claim for breach of contract, negligence, and prima facie tort. In June 2000, Aspen filed a request for a jury trial, acknowledging that its request was not timely. Longford object-ed, and the trial court denied Aspen's re-quest.

{7} A bench trial was held on April 1 and 2, 2002. During Longford's closing argu-ment, it voluntarily dismissed its counter-claim. The trial court issued a letter deci-sion on April 10, 2002. The letter decision indicated Aspen was entitled to the WIP amount, denied all other claims by Aspen for compensatory and punitive damages, and in-dicated the trial court had tentatively deter-mined that each side should bear its own fees and costs. The letter decision contained some statements favorable to Aspen's posi-tion on the merits and invited the parties to submit proposed findings of fact and conclu-sions of law if an appeal was contemplated.

{8} Both sides submitted proposed find-ings and conclusions. Contrary to its repre-sentations in its brief in chief, Aspen pro-posed, among other things, that the trial court determine that Aspen was the prevail-ing party and should, under the contracts, receive its attorney fees, costs, and expenses. Longford proposed that the trial court deter-mine that Aspen was not the prevailing par-ty, in part because Aspen had turned down Longford's 1999 offer of judgment for the WIP amount, plus interest, and Aspen had not done better at trial. The trial court's findings and conclusions determined, among other things, that Aspen was not the prevail-ing party because it did not do better after trial than either Longford's early settlement offer or Longford's offer of judgment, both of which were made within the first few months after suit was filed.

{9} The trial court's judgment was filed on May 14, 2002. It awarded Aspen $27,534.14, plus interest thereon from April 2, 1999, until paid. No party was awarded attorney fees, costs, or expenses of litigation. Two days later, Longford filed pleadings, in which it sought a determination that it was the pre-vailing party and therefore was entitled to its reasonable attorney fees, costs, and expenses of litigation. Longford's theory was that

since the trial court had determined that Aspen was not the prevailing party, Long-ford must be the prevailing party. The trial court denied the motion and reiterated its determination that each side should bear its own fees and costs.

{10} Additional facts will be discussed in connection with the issues raised on appeal.

## II. DISCUSSION

### A. Motion for a Jury Trial

■ {11} Aspen argues that the trial court abused its discretion in denying its untimely request for a jury trial. In support of this, Aspen points out that the trial court has the discretion under Rule 1–039(A) NMRA 2003 to grant a jury trial even if the request for a jury is not timely. On appeal, we review the trial court's ruling on such a request only for abuse of discretion. *Carlile v. Cont'l Oil Co.*, 81 N.M. 484, 486–87, 468 P.2d 885, 887–88 (Ct.App.1970). The trial court's ruling is presumed valid, and the burden is on Aspen to show how the trial court abused its discretion. *Id.* This Court has previously held that the failure to file a timely request for a jury trial waives the jury trial and that a trial court does not abuse its discretion in denying a later request for a jury trial under Rule 1–039. *Myers v. Kap-nison*, 93 N.M. 215, 216–17, 598 P.2d 1175, 1176–77 (Ct.App.1979).

{12} Aspen relies on *Bates v. Board of Regents of Northern New Mexico Communi-ty College*, 122 F.R.D. 586 (D.N.M.1987), which, in Aspen's view, establishes that the motion should be granted because there was no compelling reason to deny it. Aspen is mistaken. In *Bates,* for a year and a half, the parties and the trial court had treated the case as one that would be tried to a jury, and they only discovered that there had been no jury demand when the case was set for trial on a non-jury docket. *Id.* at 587. Thus, the court in *Bates* decided to exercise its discretion to allow a jury trial, even though Plaintiff had failed to file a timely demand for a jury. *Id.* at 588–89. In this case, the parties had planned to try the case to a judge, until Aspen filed its untimely demand for a jury. In short, *Bates* does not per-

suade us that the trial court abused its discretion in this instance. The fact that one trial court exercises discretion in a certain manner does not compel a reversal when another trial court does not exercise discretion in the same manner. *See Cadle Co. v. Phillips,* 120 N.M. 748, 750, 906 P.2d 739, 741 (Ct.App.1995).

### B. Longford's 1999 Offer of Judgment

■ {13} Aspen contends that Longford's proposed findings and conclusions improperly referred to Longford's 1999 offer of judgment. Aspen argues that under Rule 1–068 NMRA 2003, an offer of judgment is admissible only in a proceeding to determine costs. Aspen asserts, without citation to authority, that the submission of proposed findings and conclusions is not such a proceeding. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel."). Under the circumstances of this case, we disagree. The trial court had already indicated its tentative ruling on the issue and had asked for proposed findings and conclusions. In addition, there was evidence during the trial that Longford did not object to paying Aspen the WIP amount and in fact had offered to pay it to Aspen a few days after the suit was filed. Finally, although the trial court altered the rationale for its decision between the time of the letter decision and the entry of findings and conclusions, the fact remains that the trial court's result was always the same: Aspen was entitled only to the $27,534.14 WIP amount. Thus, we do not perceive any prejudice to Aspen flowing from Longford's mention of the offer of judgment in its proposed findings.

### C. Contract Interpretation

{14} Aspen argues that the trial court erred in its interpretation of the contracts. In the absence of ambiguity, the interpretation of language in a contract is an issue of law, which we review de novo on appeal. *Peck v. Title USA Ins. Corp.,* 108 N.M. 30,

33, 766 P.2d 290, 293 (1988); *Collado v. City of Albuquerque,* 2002–NMCA–048, ¶ 15, 132 N.M. 133, 45 P.3d 73. Neither party has argued that the terms of the contract are ambiguous. "A contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract." *Bank of N.M. v. Sholer,* 102 N.M. 78, 79, 691 P.2d 465, 466 (1984).

■ {15} Aspen argues that certain paragraphs of the contract, when read together, required Longford to give Aspen notice of the defective work and an opportunity to cure the problem before Longford could terminate the contract. We do not agree.

{16} The paragraphs in question read as follows:

9. Should Subcontractor at any time refuse or neglect to supply a sufficient amount of skilled workmen or materials of the proper quality and quantity, or fail in any respect to perform the Work with promptness and diligence or in a good and workmanlike manner, or cause by any act of commission or omission the stoppage or delay of or interference with the work of Contractor, or of any other subcontractor on the project, or fail in the performance of any of its agreements herein, and should any such failure or other action or inaction as outlined above continue for twenty-four (24) consecutive hours after Subcontractor's receipt of written notice specifying the particulars of such failure or action or inaction, served personally or mailed or sent by receipted facsimile to the Subcontractor, Contractor *may:*

A) Provide through itself or through others, any such labor or materials necessary to perform the Work until, in the sole judgment of the Contractor, the deficiencies of the Subcontractor's Work have been corrected, and deduct the cost thereof from any money due to Subcontractor from Contractor, or thereafter to become due to Subcontractor under this Agreement. If such cost shall exceed any money due or otherwise to become due, the Subcontractor shall pay the difference to Contractor, or

B) Terminate this Agreement, in which event Contractor may complete the Work included in this Agreement. In case of such termination, Subcontractor shall not be entitled to receive any further payment under this Agreement. If the expense of finishing the Work shall exceed any unpaid balance otherwise due from Contractor to Subcontractor, then Subcontractor shall pay the difference to Contractor. The expense incurred by Contractor shall include any damages, excess costs to other subcontractors, legal fees or court costs incurred because of the default of the Subcontractor.

10. *Notwithstanding any other provision herein,* Contractor may, in its sole discretion, cancel this Agreement at any time, and shall be liable to Subcontractor only for labor and materials rendered or supplied up to the date this Agreement is cancel[l]ed.

(Emphasis added.)

{17} Aspen argues that under paragraph 9, it was entitled to notice and an opportunity to cure any problems before Longford terminated the contract. Longford pointed out that the language in paragraph 9 was permissive and that even if it were not, paragraph 10 gave Longford the right, in its sole discretion, to cancel the agreement at any time.

{18} We agree with the trial court that paragraph 9 simply gives Longford options to use if it chooses to use them and that paragraph 10 gives Longford the option of cancelling the contract at any time, with or without cause. Such a reading gives effect to all the provisions of the contract.

{19} Aspen contends that this case is similar to *Public Service Co. of New Mexico v. Diamond D Construction Co.,* 2001–NMCA–082, 131 N.M. 100, 33 P.3d 651. Aspen is mistaken. In *Diamond D,* the contract between the parties specifically required both parties to "use their best efforts to amicably and promptly resolve the dispute." *Id.* ¶ 5. The contracts between Aspen and Longford do not contain such a provision.

{20} Aspen also argues that the trial court erred in failing to award Aspen com-

pensatory damages. We note, however, the contracts specifically limit Longford's liability, in the event of termination of the contract, to the amount of labor and materials already used-what the parties have referred to as the WIP amount. Thus, the trial court did not err in limiting Aspen's recovery to the WIP amount.

**D. Prevailing Party**

{21} A trial court's determination concerning an award of attorney fees is reviewed only for abuse of discretion. *Hedicke v. Gunville,* 2003–NMCA–032, ¶ 23, 133 N.M. 335, 62 P.3d 1217. When a contract provides that the prevailing party in the litigation shall be awarded reasonable attorney fees and costs, a trial court may abuse its discretion if it fails to award attorney fees. *Dennison v. Marlowe,* 108 N.M. 524, 526–27, 775 P.2d 726, 728–29 (1989); *Hedicke,* 2003–NMCA–032, ¶ 23, 133 N.M. 335, 62 P.3d 1217. The contracts in this case provided that

[i]n the event either party hereto shall prevail in any legal or equitable action to enforce any of the terms of this Agreement, such party shall be entitled to receive from the other party all court costs, reasonable attorney's fees and all other expenses incurred in such litigation and the preparation thereof including any appeal thereof.

The meaning of this provision of the contract is an issue of law, which we review de novo on appeal. *Peck,* 108 N.M. at 33, 766 P.2d at 293; *Collado,* 2002–NMCA–048, ¶ 15, 132 N.M. 133, 45 P.3d 73. The trial court's determination concerning an award of costs is reviewed only for abuse of discretion. *Mascarenas v. Jaramillo,* 111 N.M. 410, 415, 806 P.2d 59, 64 (1991).

{22} Initially, Aspen points out that the trial court entered a judgment in its favor in the amount of $27,534.14, plus interest from April 2, 1999, until paid. Thus, Aspen contends that it prevailed and is entitled to its attorney fees, costs, and expenses, including gross receipts tax, in the amount of $60,022.60. Aspen also argues that it prevailed on the counterclaim because the trial

court entered judgment in its favor on the counterclaim.

{23} Aspen relies on *Dunleavy v. Miller*, 116 N.M. 353, 360, 862 P.2d 1212, 1219 (1993), which indicates that the prevailing party is the plaintiff who recovers a judgment against a defendant. However, *Dunleavy* was a simple personal injury case with no counterclaims. This case involves multiple claims and counterclaims. Moreover, *Dunleavy* did not involve a situation in which the defendant was always willing to pay what it was ultimately determined to owe. Thus, *Dunleavy* is distinguishable.

{24} In *Hedicke,* this Court was faced with a more complex dispute, involving multiple claims and counterclaims and a contract that provided that the prevailing party was entitled to reasonable attorney fees. In that case, the trial court had determined that each party should bear its own fees and costs incurred during the litigation. On appeal, this Court reversed. We held that the phrase "prevailing party" should be given its ordinary meaning. *Hedicke,* 2003–NMCA–032, ¶¶ 26–27, 133 N.M. 335, 62 P.3d 1217. However, in determining whether there was a prevailing party, we considered all the claims made by both sides in the lawsuit, and we determined that when one party prevailed on four of five claims, that party was the prevailing party. *Id.* ¶¶ 28–30. We specifically recognized that there can be situations in which neither side is a prevailing party. *Id.* ¶ 28.

{25} Applying *Hedicke* to this case, we hold that the trial court did not abuse its discretion in determining that Aspen was not the prevailing party, despite the fact that it obtained a judgment for some amount in its favor. Aspen's complaint in this case was not limited to seeking the WIP payment. Instead, Aspen alleged that Longford breached the contracts; that Longford's termination of the contracts was in bad faith, willful, and malicious; and that Longford had entered into the contracts under false pretenses. At trial, Aspen sought slightly more than $1 million in compensatory damages, which it claimed were caused by Longford's alleged breach of the contract. This included amounts Aspen had to pay for unemployment benefits for workers it had to lay off, amounts paid to the Internal Revenue Service for fines and penalties, and hundreds of thousands of dollars of lost gross profits and interest on lost gross profits. The trial court specifically found against Aspen on all its claims, except the WIP amount. As to this amount, the trial court found that Longford offered to pay the WIP amount, plus interest, within days after the suit was filed. Under these circumstances, we affirm the trial court's determination that Aspen was not a prevailing party.

{26} By the same token, we hold that the fact that judgment was entered in Aspen's favor on the counterclaim does not, by itself, make Aspen the prevailing party on the counterclaim. Longford's counterclaim sought damages for Aspen's breach of contract or, in the alternative, negligence in performing its work and for prima facie tort based on Aspen's having cancelled the permits issued for construction of the walls. The counterclaim was tried to the court and then dismissed by Longford during its closing argument. The trial court found and concluded that Aspen breached the contract between the parties and that the work Aspen performed was not performed according to the plans and specifications or in a workmanlike manner. Thus, we hold that the trial court did not abuse its discretion in determining that Aspen was not a prevailing party on the counterclaim.

{27} Aspen has asserted in its brief in chief, without citation to the record, that at trial, (1) Longford admitted that Aspen's work was in conformance with the contract and (2) Longford's initial claim of defective work was conceded to be untrue. We learned at oral argument that Aspen based this representation on Longford's abandonment of its counterclaim during trial. Because there was no citation to the record, neither Longford nor this Court understood what Aspen was referring to, and it appeared to us that Aspen was simply making up facts out of whole cloth. A simple citation to the portion of the proceedings where Longford abandoned its counterclaim would have enabled Longford to have responded to Aspen's

contention and would have enabled this Court to decide the issue thus joined.

{28} In Aspen's reply brief, it asserts in bold print that "[t]here was absolutely no evidence in the record whatsoever that Aspen failed in any way to adequately perform under the contract." We learned at oral argument that Aspen's "no evidence" assertion was related to its interpretation of the evidence as to the timing of Longford's concerns about the walls and the problems Longford discovered, which we later discuss. However, in order to challenge the trial court's findings of fact as not supported by substantial evidence, Aspen must clearly indicate the findings that it wishes to challenge and must provide this Court with a summary of all the evidence bearing on the finding, including the evidence that supports the trial court's determination, regardless of interpretation. *Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 184, 848 P.2d 1108, 1111 (Ct.App.1993). In reviewing such a challenge, this Court views the evidence in the light most favorable to the finding below. *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177. To the extent that the evidence on a particular issue was conflicting, we disregard evidence and inferences that are contrary to the trial court's finding. Aspen's "no evidence" claim again appeared to be a misstatement of the evidence, when in fact it was a failure to explain its argument with reference to all of the evidence, both favorable and unfavorable, followed by an explanation of why the unfavorable evidence does not amount to substantial evidence, such as is necessary to inform both the appellee and the Court of the true nature of the appellant's arguments. *Cf. Martinez*, 115 N.M. at 184–85, 848 P.2d at 1111–12 (explaining the process of appellate argument in the analogous situation of whole record review).

{29} Failure to provide citations and challenge findings affect this Court's ability to decide the issues. Clearly, counsel for all litigants are more effective advocates when they observe the Rules of Appellate Procedure. As regards the issues in this case, even if we were inclined to treat Aspen's assertions as a proper challenge to the findings, which we are not, the trial court's findings in this case would be easily affirmed. John Murtagh testified that he stood on a wall in Crystal Ridge, the wall fell down, and he was able to kick the railroad tie away. He also testified to a lack of silt fabric on the wall. Mark Kleist, one of Longford's employees, testified in great detail concerning the problems with Aspen's work. Aspen's interpretation of this evidence was for the trial court to weigh and determine.

{30} In the trial court, Longford argued that since the trial court had determined that Aspen was not a prevailing party, Longford must be the prevailing party. On appeal, it argues that it is entitled to its reasonable attorney fees, costs, and expenses of litigation, which total $86,333.64.

{31} We recognize that Longford successfully defended itself against Aspen's claims. However, Longford also filed counterclaims that were tried to the court and were withdrawn only during Longford's closing argument. In the absence of a judgment in its favor under the counterclaims, we do not think that Longford was a prevailing party in an action to enforce the contract.

{32} Moreover, the trial court's order that each side bear its own fees and costs is easily understandable. The main issues in this case were legal issues concerning the meaning of the provisions of the contract. These were issues of law that could have and, with the benefits of hindsight, probably should have been resolved early in the case by a motion for summary judgment. *See Peck*, 108 N.M. at 33, 766 P.2d at 293. Instead, both sides in this case staked out their positions and pressed them vigorously. Both sides, having grown dissatisfied with the attorneys who originally represented them, switched attorneys. As a result, each side incurred attorney fees, costs, and general expenses that were several times the amount that either side could reasonably have expected to gain from the litigation. Under these circumstances, we agree with the trial court that no one really prevailed in this case.

### E. Interest

{33} The award of prejudgment interest is governed by statute in New Mexico. *See,* NMSA 1978, §§ 56–8–3 (1983), 56–8–4 (1993). The meaning of a statute is a question of law, which we review de novo on appeal. *Souter v. Ancae Heating & Air Conditioning,* 2002–NMCA–078, ¶ 8, 132 N.M. 608, 52 P.3d 980.

{34} Longford argues that Section 56–8–3 permits prejudgment interest only if a party obtains damages for breach of contract. However, the statute does not use the term "damages." Instead, it refers to "money due by contract." Section 56–8–3(A). Moreover, our Supreme Court has held that "[a]n injured party is entitled to prejudgment interest as a matter of right when the amount due under the contract can be ascertained with reasonable certainty." *Kueffer v. Kueffer,* 110 N.M. 10, 12, 791 P.2d 461, 463 (1990).

{35} Moreover, "one of the foremost equitable considerations before a trial court is the fact that a plaintiff has been denied the use of the money during the pendency of the lawsuit." *Ranch World of N.M., Inc. v. Berry Land & Cattle Co.,* 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990). Thus, the fact that Longford offered to pay the WIP amount before trial does not persuade us that it was inequitable for the trial court to award Aspen prejudgment interest on the WIP amount. Having found that the award of interest was proper under Section 56–8–3(A), we need not address Longford's arguments concerning a possible award of interest under Section 56–8–4(B).

### III. CONCLUSION

{36} The judgment of the trial court is affirmed. The parties shall bear their own fees and costs for this appeal.

{37} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.