This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

SUZANNE STAR,

     Plaintiff-Appellant,

v.                          **No. A-1-CA-36136**

SIERRA LOS PINOS PROPERTY
OWNERS ASSOCIATION,

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

Suzanne Star
Jemez Springs, NM

Pro Se Appellant

Stephen C.M. Long
Albuquerque, NM

Brad Hays
Rio Rancho, NM

for Appellee

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Plaintiff Suzanne Star appeals[1] the district court's ruling that the Sierra Los Pinos Property Owners Association (the Association) Board of Directors (the Board) did not breach the implied contract formed by the Association's bylaws (the bylaws) or violate

---

[1] Four plaintiffs originally filed suit. The district court granted a stipulated motion to dismiss one of the plaintiffs before trial. Only Plaintiff appeals the district court's judgment.

Plaintiff's inspection rights under the Homeowner Association Act (HOAA), NMSA 1978, § 47-16-1 to -16 (2013, as amended through 2015). We affirm.

**BACKGROUND**

**{2}**     The Association is a homeowner's association incorporated in 1973 with its address in Jemez Springs, New Mexico. Plaintiff has been a member of the Association for approximately twenty-five years. Plaintiff served on the Board and became concerned over an increase in delinquent dues payments in 2013. Plaintiff also became increasingly concerned over the accuracy of the Board's financial reporting.

**{3}**     In December 2014, Plaintiff sought to inspect the Association's records, including: December 2012 and 2013-2014 bank statements; the general ledger from 2013-2014; specific 2013 and 2014 invoices; official communications between the Association board members and the New Mexico Office of the State Engineer (OSE); the 2012 and 2014 end of fiscal year and year-end balance sheets; the 2012 and 2014 profit and loss reports; the December 2014 accounts receivable aging report; and the December 2014 open invoices report. Plaintiff conceded she was able to inspect the Association's governing documents, the names of all association members, the minutes for the last five years, the operating budget, information on special assessments, some financial statements, the most recent audit, and contracts requested in other requests. The Board did not produce for inspection the bank statements, the general ledger, invoices, the accounts receivable aging reports, an open invoice report, and communications between board members and the OSE.

**{4}**     After several unsuccessful attempts to gain access to the withheld records, Plaintiff brought suit claiming breach of contract for failure to allow inspection of the records as required by the bylaws and the HOAA. Relevant to this appeal, Plaintiff alleged the Association breached the bylaws by: (1) failing to provide for the inspection of books and records as required by Article IX, which grants members the right to inspect "[t]he books, records, and papers of the Association"; (2) failing to "[c]ause an audit of the Association[']s books every three years or sooner at the [B]oard's discretion" as required by Article VI, Section 2(g); and (3) failing to "cause and prepare a review of the Association books to be made at the completion of each fiscal year or at the completion of his/her term" as required of the Treasurer by Article VII, Section 8. Plaintiff sought an order compelling the Board to allow inspection of the records under the HOAA and also specific performance under the contract requiring the Board to allow inspection of the Association's books, records, and papers and to conduct the required audits and reviews.

**{5}**     After a bench trial, the district court issued its findings of fact and conclusions of law. The district court found that all Association information had been made available for inspection on a reasonable basis and the Association financial information had been provided via the Association's website. The district court concluded the Association can redact "personal adverse financial information" from records it produces for inspection. The district court also concluded the terms "audit" and "review" are interchangeable

when interpreting the bylaws, and that the Association had not breached its duties under Articles VI and VIII for an annual review and triennial audits. Based on its interpretation of the bylaws, the district court concluded the Board had fulfilled its obligations to Plaintiff. Plaintiff appealed.

## DISCUSSION

**{6}** Plaintiff argues the district court erred in concluding that: (1) the HOAA and Article IX of the bylaws allow the Board to limit the financial statements and communications that are subject to inspection; (2) the bylaws and the HOAA allow the Board to redact "personal adverse financial information"; and (3) the terms "audit" and "review" are interchangeable as used in the bylaws. Both parties argue the case should be remanded so the district court can determine what, if any, costs should be awarded.

## I.      The HOAA

**{7}** We first address the applicability of the HOAA. The HOAA applies "to all homeowner associations created and existing within this state." Section 47-16-15(A). However, the following sections do not apply to homeowner associations created before July 1, 2013: (1) Section 47-16-9 (describing rules for proxy and absentee voting); (2) Section 47-16-10 (requiring homeowner associations to provide an annual audit, review, or compilation if they have one hundred or more lots, or upon majority vote of lot owners if they have less than one hundred lots); and (3) Section 47-16-14 (addressing the award of attorney fees and costs to a party that prevails in a civil action, based upon a provision of a declaration or bylaw, between a lot owner and homeowner association). The Association was created in 1973, and both parties agreed the bylaws were signed in 1992. Therefore, Section 47-16-9, Section 47-16-10, and Section 47-16-14 of the HOAA do not apply to the Association. *See* Section 47-16-15(B) (describing sections exempted from application to homeowners associations created before July 1, 2013).

**{8}** Only three provisions of the HOAA can invalidate existing provisions of the articles of incorporation, declaration, bylaws or rules of a homeowner association created before July 1, 2013. *See* Section 47-16-15(C) (stating that only Sections 47-16-4, 47-16-8, and 47-16-16 invalidate existing provisions). However, none of these invalidating sections are at issue in this case.

## II.      The District Court Properly Interpreted the Bylaws

**{9}** The parties do not dispute that the bylaws created a valid, written, and enforceable contract between Plaintiff and the Association. Therefore we assume, without deciding, that the bylaws are a contract and analyze the issues under our contracts jurisprudence. *Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶¶ 11, 14, 124 N.M. 633, 954 P.2d 65 (analyzing a breach of implied contract claim when the parties did not contest the existence of a contract).

**{10}** "The primary objective in construing a contract is to ascertain the intention of the parties." *Mobile Inv'rs v. Spratte*, 1980-NMSC-006, ¶ 6, 93 N.M. 752, 605 P.2d 1151. "The contract will be considered and construed as a whole, with meaning and significance given to each part in its proper context, so as to ascertain the parties' intentions." *Segura v. Kaiser Steel Corp.*, 1984-NMCA-046, ¶ 12, 102 N.M. 535, 697 P.2d 954. "When the language of the contract clearly and unambiguously expresses the agreed-upon intent of the parties, this Court will give effect to such intent. The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity." *LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 18, 282 P.3d 758 (internal quotation marks and citations omitted).

**{11}** Neither party argues any provision of the bylaws are ambiguous and we therefore review the district court's interpretation de novo. *See Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 10, 143 N.M. 684, 180 P.3d 1183 ("We review a district court's interpretation of an unambiguous contract de novo[.]" (internal quotation marks and citation omitted)).

**{12}** At issue in the present case is the meaning of two articles of the bylaws: (1) Article IX, which requires the Association to allow inspection of certain records; and (2) Article VI(1)(c), which confers certain powers on the Association's Board. We address each article in turn.

## A.     Article IX

**{13}** Article IX of the bylaws states that "[t]he books, records, and papers of the Association shall at all times during reasonable business hours be subject to inspection by any member." In determining what is covered by the terms "books, records, and papers," we consider the entirety of the bylaws to effectuate the intent of the parties. *See Segura*, 1984-NMCA-046, ¶ 12. Article VI, Section 1(e) of the bylaws grants the Board the power to "[i]nterpret the [r]estrictive [c]ovenants, and these [b]ylaws." The Board interprets its bylaws as requiring it to maintain "books, records, and papers" as such documents are defined in the HOAA. Section 47-16-5(C) lists eleven types of records, including, among other items, minutes of all meetings, the Association's operating budget, current assessments, financial statements, financial audits or reviews, current contracts, and current insurance policies. NMSA 1978, §47-16-5(C)(1)-(11). This interpretation, being consistent with statutory authority addressing the same subject matter, is "a reasonable construction of the usual and customary meaning of the contract language." *Smith*, 2008-NMCA-043, ¶ 10 (internal quotation marks and citation omitted) (explaining de novo review of unambiguous contracts).

**{14}** Plaintiff maintains that it is improper to interpret the bylaws consistent with the HOAA because the bylaws were enacted prior to the HOAA and, therefore, the HOAA cannot invalidate the bylaws. We are not persuaded because the Board, in exercising its power to interpret the bylaws, did not rely on the HOAA to invalidate any provision of the bylaws. Instead, the Board simply concluded, as a matter of policy, that "books, records, and papers" required by the bylaws should be the same as the financial

records specified in the HOAA. This interpretation is consistent with the bylaws as a whole, which grant the Board the power to interpret, and with the customary meaning of financial records in the context of homeowners' associations' duties.

**{15}** Plaintiff also urges us to interpret "books, records, and papers" in accordance with statutes and case law applicable to corporations in general. We see no reason to resort to authority that applies to circumstances dissimilar to the homeowners' association context. The HOAA provides a directly relevant framework consistent with the overarching purposes of the bylaws at issue here. We therefore affirm the district court's interpretation of the bylaws which is consistent with Section 47-16-5(C) of the HOAA.

### B.      Article VI

**{16}** Article VI of the bylaws provides that the Board "shall have power to . . . [e]xercise for the Association all powers, duties, and authority vested in or delegated to the Association and not reserved to the membership by other provisions of these [b]ylaws, the [a]rticles of [i]ncorporation or otherwise expressly provided." Pursuant to this authority, the Board adopted a policy that it would restrict access to members' personal identifying information, such as a member's account numbers and the name of any member whose fees were delinquent. Plaintiff claims she is entitled to this information.

**{17}** The district court concluded that the Association "may, in the best interests of the Association, withhold disclosure of personal adverse financial information on delinquent accounts." This conclusion is consistent with the language of Article VI granting broad policy-making powers to the Board and with the Association's articles of incorporation, which state that "[t]he objects and purposes [of the Association] are to provide services to members of the Association . . . , such services to include the promotion of members' privacy[.]" Plaintiff herself agreed that "[t]he Board can make whatever policies they want."

**{18}** Plaintiff argues that the Board cannot restrict access to members' personal identifying information unless it complies with the Data Breach Notification Act, NMSA 1978, Section 57-12C-2(C) (2017). We reject this argument because it was not preserved. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted). Plaintiff did not mention this statute in her requested findings of fact and conclusions of law or in her motion for reconsideration. We therefore affirm the district court's interpretation of Article VI.

### II.      The District Court Properly Found There Was No Breach of the Bylaws

**{19}** We turn now to the question whether the Association breached the bylaws' requirement allowing access to its "books, records, and papers." Breach of contract is a

question of fact that we review for substantial evidence. *Collado v. City of Albuquerque*, 2002-NMCA-048, ¶ 15, 132 N.M. 133, 45 P.3d 73. Under this standard, "we review the evidence in the light most favorable to support the [district] court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844.

## A. Production of Financial Records

**{20}** Plaintiff contends that the Association breached the bylaws by failing to produce for inspection bank statements, the general ledger, invoices paid for various projects, communications between the Association and the OSE, year-end balance sheets, and accounts receivable aging report. We first observe that the bylaws, as interpreted by the Association and the district court, do not require production of all of these specific items. The bylaws as interpreted do require production of "financial statements and accounts" and "all current contracts[.]" Section 47-16-5(C)(8), (10). The district court found that "[p]ursuant to Article IX of the [b]ylaws, all Association information has been available to Association members on a reasonable basis." Substantial evidence supports this finding and the district court's other, related findings.

**{21}** Bill Bennett, the Association's president, testified that the Association's financial statements and accounts are found primarily in the spreadsheets from the treasurer's quarterly reports, which are placed on the Association's website. Judy Kilburg, the Association's treasurer, testified that on the Association's website are the profit and loss statement, the balance sheet (showing balances in all accounts, accounts receivable, and fixed assets), and a spreadsheet that includes details from invoices, and month-to-month income and expenses. Also posted were summaries of the 2013 quarterly reviews performed by the Association's accountant as well as the end-of-year reviews, the budget, the Quickbooks reports showing "everything by each account," and the audits for 2012-14. She further testified that the financial reporting she performs for the Association includes information about "[f]inancial statements and accounts," which is the language used in the HOAA at Section 47-16-5(C)(8). In summary, Kilburg testified that she has provided all of the information required by the bylaws, as interpreted by the Association, to comport with Section 47-16-5 of the HOAA.

**{22}** We conclude that substantial evidence supports the district court's finding that the Association complied with the bylaws' requirement to make available its "books, records, and papers" as those terms, we have held, were properly interpreted by the Board and by the district court.

## B. The Bylaws Do Not Rigidly Define Audit and Review

**{23}** Plaintiff alleged that the Board failed to have an audit conducted every three years and perform an annual review. The Board concedes it failed to timely complete the 2012 audit and after litigation ensued, had audits conducted for 2012, 2013, and 2014. Due to these audits, Plaintiff conceded at trial that she was no longer contesting the failure of the Board to conduct audits.

**{24}**     However, Plaintiff argues on appeal that, because the bylaws have provisions for both audits and reviews, the district court erred when it concluded the words "audit" and "review" are interchangeable under the bylaws and, therefore, an "audit" can satisfy the yearly "review" requirement. Even if we accept Plaintiff's argument that an audit substantially differs from a review and offers the "highest, but not absolute level of assurance[,]" we conclude that this issue is moot because the Board is free to exceed the duties set out in the bylaws. By obtaining yearly audits, the Board satisfied its triennial audit requirement and, by Plaintiff's own argument, exceeded its yearly review requirement by providing a greater level of assurance. Moreover, the bylaws give no indication the two requirements must be satisfied with different reports. Plaintiff's concerns that the Board will use the district court's decision to choose the cheapest or least rigorous form of financial oversight are speculative. The Board's hypothetical future conduct was not before the district court and therefore the district court's decision does not support the interpretation causing Plaintiff concern. Since Plaintiff conceded the Board came into compliance with the audit requirement after the complaint was filed by obtaining audits for 2012, 2013, and 2014, we conclude that Plaintiff's allegations that the Board failed to comply with its audit and review requirements are moot and this Court need not address her speculative concerns further.

## III.     Judgment for Costs

**{25}**     Both Plaintiff and the Board ask this Court to remand this case to the district court so it can determine what, if any, costs should be awarded. A remand is unnecessary to resolve this issue because the district court never lost jurisdiction to resolve the matter of costs. *See Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 33, 113 N.M. 231, 824 P.2d 1033 ("It is clear, though, that a pending appeal does *not* divest the trial court of jurisdiction to take further action when the action *will not affect the judgment on appeal* and when, instead, the further action enables the trial court to carry out or enforce the judgment."). The district court's entering of costs is collateral to and separate from the district court's judgment on the merits, *see id.*, and the district court still retains jurisdiction on the question of costs.

## CONCLUSION

**{26}**     We affirm the district court's judgment on all issues except the issue of costs, which remains pending in the district court.

**{27}     IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**BRIANA H. ZAMORA, Judge**

**CYNTHIA A. FRY, Judge Pro Tempore**