**LASALLE BANK NATIONAL ASSOCI-ATION (fka LaSalle National Bank) as Trustee for Certificate Holders of Asset Securitization Corporation Commercial Mortgage Pass–Through Certificates, Series 1997–D5, Plaintiff,**

v.

**NOMURA ASSET CAPITAL CORPO-RATION and Asset Securitization Corporation, Defendant.**

No. 00 CIV. 8720(NRB).

United States District Court,
S.D. New York.

Sept. 28, 2001.

Robert H. Pees, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, for LaSalle Bank National Association.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff LaSalle Bank National Association ("LaSalle," or "plaintiff"), as trustee for the certificateholders of a Real Estate Mortgage Investment Conduit ("REM-IC"), brings this action against Nomura Asset Capital Corporation ("Nomura") and Asset Securitization Corporation ("ASC") (collectively, "defendants"), both Delaware corporations, for breach of certain representations and warranties, and for attorney's fees. Before the Court is defendants' motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss plaintiff's complaint for lack of subject matter jurisdiction. For the reasons that follow, the motion is denied.

## I. BACKGROUND

In August of 1997, Nomura originated and closed a $50 million loan to a newly-created single-purpose entity affiliated with the Doctor's Hospital of Hyde Park, HPCH, LLC ("HPCH") (the "hospital loan"). This loan was secured by the real property, equipment, and intangibles of the hospital, as well as an assignment of the operating lease of the hospital's operator, Doctor's Hospital of Hyde Park, Inc. (the "hospital operator"). First Am. Compl. ¶ 5. In connection with the hospital loan, Nomura obtained an appraisal dated August 1, 1997 which appraised the collateral of this loan to be $68,000,000, and allocated this among the several categories of Land, Buildings/Site Improvements, Equipment, and Intangibles. First Am. Compl. ¶ 6.

On October 24, 1997, Nomura sold and conveyed all title, rights, and obligations related to the hospital loan and 155 other fixed-rate mortgage loans (collectively, the "mortgage package") to ASC pursuant to a Mortgage Loan Purchase and Sale Agreement ("MLPSA"). First Am. Compl. ¶ 7; Defs.' Mem. at 4. The MLPSA specifically acknowledged that the sale of the mortgage package was made in connection with

the formation of a REMIC trust[1] which named LaSalle as trustee. First Am. Compl. ¶ 7. In addition, Nomura made certain representations and warranties with regard to the hospital loan in the MLPSA. These included the representations that the fair market value of the real property was at least equal to 80% of the principal amount of the loan, that the hospital loan constituted a "qualified mortgage" under § 860G(a)(3) of the Internal Revenue Code of 1986[2], and that the loan was consummated in accordance with customary industry standards. First Am. Compl. ¶ 8. Under the MLPSA, Nomura must either cure any breach of these representations and warranties or repurchase the hospital loan. *Id.*

Also on October 27, 1997, ASC, LaSalle, and others entered into the Pooling and Servicing Agreement ("PSA"). In this agreement, ASC conveyed to LaSalle, as trustee, all the interest in the mortgage package it had just obtained from Nomura in the MLPSA. First Am. Compl. ¶ 9. In the PSA, ASC confirmed, inter alia, that Nomura's representations and warranties from the MLPSA were true as of October 24, 1997 and, in particular, that the hospital loan constituted a "qualified mortgage" pursuant to § 860G(a)(3). *Id.* Pursuant to the PSA, ASC must either cure any breach of these representations and warranties or repurchase the hospital loan. *Id.*

On April 17, 2000, the operator of the hospital filed for relief under Chapter 11 of the United States Bankruptcy Code, and the hospital was shut down the following day. First Am. Compl. ¶ 11. On May 31, 2000, the United States Bankruptcy Court for the Northern District of Illinois entered an order permitting the operator to reject its lease for the hospital with HPCH. Shortly thereafter, the hospital loan went into default when HPCH ceased making payments. First Am. Compl. ¶ 12.

The PSA provides that, if any of the loans comprising the mortgage package go into default, the "Special Servicer" shall "seek to maximize the timely and complete recovery of principal and interest" on that loan. PSA at § 3.01(a); First Am. Compl. ¶ 10. At the time the PSA was entered into, AMRESCO Management, Inc. was named as the Special Servicer, but, at present, AMRESCO Management, Inc.'s successor in interest, Lend Lease Asset Management, L.P. ("Lend Lease") is the Special Servicer. First Am. Compl. ¶ 10.

Because the hospital loan was in default, Lend Lease, as Special Servicer, reviewed the hospital loan file. Upon examination of the file, it determined that the hospital loan was not, in fact, a "qualified mortgage," because the appraised value of the real property securing the debt was less than 80% of the principal amount of the loan, and because the loan was not used to

---

1. "A REMIC trust represents a pool of mortgages, the beneficial ownership of which have been sold to various investors in the form of certificates representing their undivided ownership interest in the total pool. If the REMIC trust has complied with certain IRS regulations, then income received by the trust, in the form of payments made on the various mortgage loans, is passed through to the various certificate holders, without being subject to federal income tax." First Am. Compl. n. 3.

2. A "qualified mortgage" is one that is "principally secured by an interest in real property." I.R.C. § 860G(a)(3). The IRS Regulations state that the "principally secured" test is satisfied if either (i) "the fair market value of the interest in real property securing the obligation," as of either the origination date or the date of contribution to the REMIC trust was "at least equal to 80 percent" of the loan, or (ii) "substantially all of the proceeds of the [loan] were used to acquire or to improve or protect an interest" in the real property that was the security for the loan. Treas. Reg. § 1.860G–2(a).

purchase, improve, or protect the real property. First Am. Compl. ¶ 13. Lend Lease then gave notice to ASC of this alleged breach and demanded that ASC repurchase the hospital loan, as provided in the PSA. *Id.* ASC, however, refused to do so. First Am. Compl. ¶ 14. In a letter dated August 4, 2000, both Nomura and ASC denied that any representation or warranty of either the MLPSA or the PSA was breached, and, therefore, refused to repurchase the hospital loan. First Am. Compl. ¶ 16. This litigation ensued.

## II. DISCUSSION

Defendants assert that this Court lacks subject matter jurisdiction to hear this case, and move to dismiss on that ground. Defs.' Mem. at 10. Plaintiff maintains, on the other hand, that both federal-question jurisdiction and diversity jurisdiction exist. First Am. Compl. ¶ 4. Because we agree with plaintiff that there is complete diversity of the parties to this action, we deny defendants motion on that ground alone and do not consider the additional question of whether federal question jurisdiction lies in this case.

### A. Motion to Dismiss Standard

 For purposes of a motion to dismiss, we are required to accept as true the factual assertions in the complaint, *see Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Charles W. v. Maul,* 214 F.3d 350, 356 (2d Cir. 2000), and may grant the motion only where, viewing plaintiff's allegations in the light most favorable to him, "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). Moreover, at this stage of the proceedings, plaintiff need only make a prima facie showing of subject matter jur-

isdiction. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994).

### B. Diversity Jurisdiction

 LaSalle asserts that this Court has diversity jurisdiction over this case. First Am. Compl. ¶ 4. Diversity jurisdiction lies when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332. There is no dispute that the amount in controversy "far exceeds $75,000." Defs.' Mem. at 10. Furthermore, there is no dispute that defendants ASC and Nomura are citizens, for diversity jurisdiction purposes, of both Delaware and New York, because each is incorporated in Delaware and has its principal place of business in New York. *Id.*

The parties disagree, however, over the citizenship of plaintiff, LaSalle. They both acknowledge that LaSalle is a national banking association with its principal place of business in Illinois. Pl.'s Mem. in Opp'n at 8; Defs.' Mem. at 12. Under 28 U.S.C. § 1348, national banking associations are considered "citizens of the states in which they are respectively located," and the courts have construed this language to mean that a national banking association is "located" in every state in which it maintains a branch. *See, e.g., Frontier Ins. Co. v. MTN Owner Trust,* 111 F.Supp.2d 376, 379–80 (S.D.N.Y.2000); *Connecticut Nat'l Bank v. Iacono,* 785 F.Supp. 30, 31–34 (D.R.I.1992).

Defendants contend that "LaSalle maintains a branch at 477 Madison Avenue in [New York,] New York," and, therefore, under 28 U.S.C. § 1348, LaSalle is deemed to be a citizen of New York, thus defeating diversity. Defs.' Mem. at 13. Plaintiff counters that "LaSalle Business Credit, which is in fact located at 565 Fifth Avenue, New York, New York ... is a wholly-

owned subsidiary of LaSalle, *not* a branch.... Further, LaSalle does not maintain any branches in New York or Delaware." Pl.'s Mem. in Opp'n at 8–9. As this is a motion to dismiss, we will accept plaintiff's description of the relationship between LaSalle Business Credit and LaSalle.

Because a parent does not acquire the citizenship of its subsidiary, *see, e.g., Powers v. Fox Television Stations, Inc.*, 907 F.Supp. 719 (S.D.N.Y.1995), the citizenship of LaSalle Business Credit is irrelevant to the determination of the citizenship of the parties. Defendants seem to concede this point, which they raise in their original memorandum, *see* Defs.' Mem. at 13, but do not discuss in their reply to plaintiff. *See* Defs.' Reply Mem. In any event, viewing the record in the light most favorable to the plaintiff, we cannot find that LaSalle is a citizen of New York by virtue of LaSalle Business Credit's presence there.

## C. *Caption of Original Complaint*

The original complaint to this action was captioned:

> LaSalle Bank National Association (f/k/a/ LaSalle National Bank) as Trustee for Certificateholders of Asset Securitization Corporation Commercial Mortgage Pass–Through Certificates, Series 1997–D5, *By and Through Lend Lease Asset Management, L.P.*, (Successor in Interest to AMRESCO Management, Inc.) as Special Servicer, v. Nomura Asset Capital Corporation and Asset Securitization Corporation.

Compl. (emphasis supplied). Although LaSalle dropped the reference to Lend Lease in the caption when it drafted its Amended Complaint, *see* Am. Compl. at 1, it did not change a similar reference to Lend Lease in the signature block thereof. *See Id.* at 18. Defendants assert that these references to Lend Lease lead to the conclusion

that Lend Lease is a plaintiff in this case. Defs.' Mem. at 10. Plaintiffs counter that these references are merely "typographical error[s]" that have no bearing on the existence of diversity jurisdiction. Pl.'s Mem. in Opp'n at 9.

■ Under the rule set down in *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), a limited partnership has the citizenship of each of its general and limited partners. Lend Lease is a limited partnership whose general partner is a Delaware corporation. Prahofer Aff. ¶ 4 and Exh. C. Therefore, Lend Lease is a citizen of Delaware, as are both defendants. Thus, if Lend Lease is indeed a party to this action, then there would be no diversity jurisdiction present. *See Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 267–68, 2 L.Ed. 435 (1806) (diversity jurisdiction requires complete diversity).

■ As this is a motion to dismiss, we will accept as true LaSalle's assertion that the inclusion of Lend Lease on the face of the complaint was a mere typographical error. It is clear, moreover, that such an error is not a proper basis on which to rule that diversity is lacking. *See Choi v. Kim*, 50 F.3d 244, 247 (3d Cir.1995) (although the complaint was captioned, "Choi by and through Song," it was plain from the body text that Choi was meant to be the only named plaintiff in the case, and the district court was incorrect in defeating diversity on the basis of Song's citizenship). Therefore, the naming of Lend Lease in the caption of the original complaint does not defeat diversity.

## D. *Fed.R.Civ.P. 17*

■ Defendants second argument is based on Fed.R.Civ.P. 17, which requires that "[e]very action shall be prosecuted in the name of the real party in interest."

Defendants contend that, regardless of any typographical errors in plaintiff's complaint, it is Lend Lease, and not LaSalle, that is the real party in interest. Defs.' Mem. at 11. Therefore, following the command of Rule 17, Lend Lease must prosecute this action, and, as noted above, *see* Part II.D., supra, the presence of Lend Lease would defeat diversity jurisdiction. Plaintiff disputes defendants' assertion and maintains that LaSalle is, indeed, the "real party in interest." Pl.'s Mem. in Opp'n at 9–10. We agree with plaintiff.

■ At the outset, it should be noted that the "question of which party is the real party-in-interest is procedural, rather than substantive," and, therefore, federal law governs the issue at hand. *Brocklesby Transport v. Eastern States Escort Services,* 904 F.2d 131, 133 (2d Cir.1990). Before turning to whether Lend Lease is the real party in interest, we note preliminarily that LaSalle, as trustee, "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of" the certificateholders and, therefore, "is a real party to the controversy for purposes of diversity jurisdiction." *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 464, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Thus, only the citizenship of LaSalle, not that of the various certificateholders, is relevant to the diversity inquiry. As LaSalle is diverse from both defendants, diversity jurisdiction is proper, subject to the following inquiry of whether Lend Lease is a "real party in interest" to the controversy.

Defendants argue that it is "clear from the express terms of the [PSA] that it is the Special Servicer, Lend Lease-and not the nominal trustee [LaSalle]—that has the power to manage, dispose of, and maximize recovery of the loan at issue, including through litigation," and, therefore, Lend Lease, not LaSalle, is the real party in interest. Defs.' Mem. at 11. A review

of the PSA, however, does not support this contention. Rather, it is clear that LaSalle is a traditional trustee who simply contractually delegated some of its duties to Lend Lease.

Section 2.01 of the PSA states that ASC "does hereby sell, transfer, assign, set over and otherwise convey to the Trustee [LaSalle] ... all the right, title, and interest" that ASC then held in the mortgages. Clearly, LaSalle, as representative owner, is the real party in interest to an action alleging breach of contractual terms relating to this transfer.

Defendants point to several sections of the PSA that they believe show that Lend Lease had the "power to service or manage the loans, or make decisions, including litigation decisions, concerning recovery of loans that have defaulted," such as the hospital loan at issue here. Defs.' Reply at 6–7; PSA at §§ 3.01(a), 3.11, 3.17, 3.18. It is true that the PSA grants Lend Lease "power and authority" to take certain actions with regard to servicing loans that are in or near default. PSA at § 3.17(b). On the other hand, however, Lend Lease must notify LaSalle upon taking certain actions, *see, e.g.,* PSA at §§ 3.09(a), must provide LaSalle with certain documents, *see, e.g., id.* at 3.10(j), 3.26(b), and must provide LaSalle with written notice and explanation of events that would have a "material adverse effect of any of the mortgages that are the subject of the PSA." *Id.* at § 3.13(d). In effect, LaSalle is the master who has delegated some of its duties to its servant, Lend Lease. Nevertheless, LaSalle remains the holder of legal title to the mortgage package transferred pursuant to the PSA, including the hospital loan that is the subject of this dispute. Lend Lease has no title or other ownership interest in these mortgages, and is strictly limited in its powers. *See, e.g.,* PSA at §§ 3.09(d), 3.17(b), 3.28(o),

3.30(b)(vi) (all listing various activities in which Lend Lease "shall not" engage). In addition, Lend Lease may be removed from its position as Special Servicer "with or without cause" by a majority of the certificateholders at any time. PSA at § 3.25(b).

Finally, defendants repeatedly assert that Lend Lease is specifically granted power by the PSA to manage and direct litigation intended to maximize recovery of loans that have defaulted, and that LaSalle lacks this power. *See, e.g.,* Defs.' Mem. at 11; Defs.' Reply at 6. Thus, defendants assert, Lend Lease is "necessarily a real party to this controversy." Defs.' Reply at 7.

The terms of the PSA demonstrate, however, that it is only LaSalle, and not Lend Lease, who has the power and obligation to sue on behalf of the REMIC certificateholders. First, Section 2.01 conveys "*all* the right, title, and interest" in the mortgages to LaSalle as trustee. PSA at § 2.01 (emphasis supplied). The plain meaning of these words ordinarily includes the power to bring suit to protect and maximize the value of the interest thereby granted. Furthermore, there is no need to rely on authority by implication, for the whole structure of the PSA demonstrates that, while Lend Lease has the power and duty to attempt to maximize recovery from defaulted loans or investments in many ways, it is LaSalle alone who may "take such action as may be appropriate to enforce such payment performance, *including the institution and prosecution of appropriate proceedings.*" PSA at § 3.07(c). For example, to obtain judgment against a borrower, Lend Lease may "prepare[ ]" "any court pleadings," but it is LaSalle alone who "shall execute" such pleadings. *Id.* at § 3.11.

In sum, the mere fact that the PSA assigns certain duties to Lend Lease in connection with maximizing recovery of defaulted loans does not affect the basic premise, announced in *Navarro,* that a trustee of an express trust is the real party in interest when suing on behalf of that trust.

### E. *Federal Question Jurisdiction*

Because we find that this court has diversity subject matter jurisdiction, we do not reach the question of whether federal question subject matter jurisdiction exists in this case.

### III. CONCLUSION

Defendants' motion to dismiss for lack of subject matter jurisdiction is hereby denied.

IT IS SO ORDERED.