This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38554**

**THE BANK OF NEW YORK MELLON,**

Plaintiff-Appellee,

v.

**RUSSELL L. BARNES,**

Defendant-Appellant,

and

**THE BANK OF NEW YORK MELLON
f/k/a Bank of New York, as Successor in
Interest to JPMorgan Chase Bank, N.A.,
as Trustee on behalf of CWHEQ 2005-F;
UNIFUND CCR PARTNERS; and UNITED
STATES OF AMERICA (IRS),**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge**

Aldridge Pite, LLP
Robert L. Negrin
Houston, TX

for Appellee

Brannen & Brannen, LLC
Daniel E. Brannen, Jr.
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Russell Barnes appeals the district court's grant of default and summary judgment to lender Bank of New York Mellon (BNYM) in its foreclosure action. On appeal, Barnes argues that (1) the district court erred in awarding summary judgment to BNYM, and (2) the district court erred in awarding fees and costs to BNYM. We affirm.

**BACKGROUND**

**{2}** Because this nonprecedential memorandum opinion is issued solely for the benefit of the parties, and we presume the parties to be familiar with the background and proceedings of this case, we provide only a brief overview of the facts. In July 2006, Barnes executed and delivered a note (Note) and mortgage (Mortgage) to Countrywide Home Loans, Inc. (Countrywide) to secure the loan used to purchase his personal residence. The Mortgage was assigned to BNYM in 2011. Barnes defaulted on his mortgage loan in March 2008 and BNYM brought a complaint for foreclosure against Barnes in 2013.

**{3}** In 2019, the district court granted default and summary judgment in favor of BNYM and ordered the property foreclosed. The district court further awarded $34,855.88 in attorney fees and costs to BNYM. This appeal followed.

**DISCUSSION**

**I. Summary Judgment**

**{4}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146.

**{5}** "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "A party may not simply argue that such evidentiary facts might exist[.]" *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 15, 296 P.3d 478 (alteration, internal quotation marks, and citation omitted).

**{6}** Barnes makes several arguments regarding the propriety of summary judgment: (1) that BNYM lacked standing; (2) that BNYM was not the real party in interest; (3) that the Note filed with BNYM's complaint is not the original Note; (4) that BNYM had no

loan to foreclose on because Barnes terminated the Mortgage in 2009 due to Countrywide's material breach; (5) that Barnes was not in default when BNYM filed; and (6) that BNYM did not dispute all of Barnes' affirmative defenses.

**{7}** BNYM responds that it met its burden for summary judgment by establishing the necessary elements to foreclose and that Barnes failed to show the existence of a genuine issue of material fact precluding summary judgment. Specifically, BNYM asserts it demonstrated that Barnes signed the Note and Mortgage at issue, that the Mortgage was assigned to BNYM, that BNYM was the holder of the Note at the time of filing, and that Barnes was in default at the time of filing.

**{8}** The district court entered default and summary judgment in BNYM's favor, finding that Barnes failed to rebut BNYM's prima facie case that Barnes had executed and delivered the Note and Mortgage to Countrywide, BNYM was the holder of the Note at the time of filing, Barnes failed to comply with the terms of the Mortgage and was in default, and that Barnes' response failed to controvert the payment history attached to BNYM's motion for summary judgment. For the reasons stated below, we agree, and we reject Barnes' claim that issues of material fact precluded summary judgment.

## A. Standing

**{9}** Because foreclosure actions originated at common law, standing in foreclosure cases is a prudential concern. *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2017-NMSC-010, ¶ 21, 390 P.3d 174. Under New Mexico's Uniform Commercial Code (UCC), a plaintiff may establish standing to foreclose in three scenarios: (1) when that plaintiff is the holder of the note; (2) when that plaintiff is a nonholder in possession of the note with the rights of the holder; and (3) when that plaintiff does not possess the note, but is still entitled to enforce subject to the lost-instrument provisions of UCC Article 3. NMSA 1978, § 55-3-301 (1992); *see also Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 14, 369 P.3d 1046. If a lender attaches a note indorsed in blank to its initial complaint, the lender is entitled to a presumption that it can enforce the note at the time of filing and establish standing. *Johnston*, 2016-NMSC-013, ¶ 25.

**{10}** Barnes argues that BNYM failed to demonstrate standing because the affidavits BNYM offered concerning the Note do not properly attest to possession. According to Barnes, the affidavit of service agent for BNYM, Keli Smith, does not reflect that BNYM possessed the Note at the time of filing its complaint, and the district court never ruled on his motion to strike Smith's affidavit. Barnes also challenges the affidavit of former counsel for BNYM, Deborah Nesbitt, whose firm formerly represented BNYM, asserting that (1) the Nesbitt affidavit does not properly authenticate the Note, asserting that the Nesbitt affidavit contains opinions not based on personal knowledge; (2) that the affidavit does not explain why BNYM did not produce the original Note until 2016; (3) that affidavit was not properly notarized; and (4) the affidavit reflects that Nesbitt's firm possessed the Note for Bank of America, not BNYM.

**{11}** BNYM responds that it demonstrated standing by alleging it was the noteholder in its complaint, attaching a copy of the original Note indorsed in blank to its complaint, and filing affidavits attesting to possession. The record confirms BNYM's assertions. Therefore, BNYM has sufficiently demonstrated standing to bring this foreclosure action. *See id.*

**{12}** To the extent Barnes contends the Smith and Nesbitt affidavits fail to demonstrate BNYM possessed the original Note when it filed the complaint, we disagree. In Smith's affidavit, she set forth that she is familiar with the records of activity concerning mortgage loans kept by Bayview Loan Servicing, LLC (Bayview);[1] that Barnes executed and delivered the Note to Countrywide, that BNYM is presently the holder of the Note connected to the Mortgage; that the Note is presently in default; and that the affidavit is based on her personal knowledge. This affidavit complies with Rule 1-056(E) NMRA and properly authenticates the Note.[2] In the absence of authority demonstrating otherwise, we conduct no further review of the Smith affidavit. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969.

**{13}** Regarding the Nesbitt affidavit, Barnes first challenged this affidavit in his motion to reconsider the district court's order of default and summary judgment. The district court did not address these arguments, denying Barnes' motion to reconsider and finding "[t]here were no disputed issues of material fact at the time the [c]ourt granted [s]ummary [j]udgment the first time around in this case." "We review the denial of a motion for reconsideration for an abuse of discretion." *Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 23, 138 N.M. 851, 126 P.3d 1215.

**{14}** In Nesbitt's affidavit, she states her firm represents BNYM in this action, that her firm received the original Note from Bank of America on November 29, 2011, that her firm maintained possession of the Note until depositing it with the district court in 2016, that the copy of the Note attached to BNYM's complaint is in all respects identical to the original Note with the exception of a removable label, and that her affidavit is based on her personal knowledge. Like Smith's affidavit, Nesbitt's affidavit complies with Rule 1-056 and properly authenticates the Note. Further, we observe that Nesbitt's affidavit was filed nearly two years before the district court awarded default and summary judgment to BNYM. Barnes had ample opportunity to challenge Nesbitt's affidavit prior to this award and failed to do so. "In prior cases we have affirmed a trial court's refusal to consider new material presented for the first time in a motion to reconsider." *Nance*,

---

[1] Bayview Loan Servicing, LLC, is the subservicer of Barnes' loan.

[2] Barnes asserts that the district court never addressed his motion to strike the Smith affidavit. However, as the district court noted, Barnes failed to file a request for hearing with his motion to strike the Smith affidavit or notice of completion of briefing related to that motion (among other motions), as is required by Rule 1-007.1 NMRA. *Cf.* Rule 1-007.1(G), (H) (stating that a request for hearing shall be filed at the time an opposed motion is filed and the movant shall file a notice of completion of briefing which alerts the judge that the motion is ready for decision). The district court implicitly resolved the motion by finding that there were no disputed issues of material fact at the time it granted summary judgment and its grant of summary judgment was proper.

2006-NMCA-012, ¶ 24. We therefore cannot say the district court abused its discretion in denying Barnes' motion to reconsider.

**{15}** Barnes next argues that the record of the Mortgage and Note's transmittal reflects that BNYM did not receive the original Note, focusing on the identification code "N Note 001 OrigUnrc" in the document transmittal record.[3] Moreover, Barnes asserts that he showed the original Note differed from two other versions of the Note, including the version attached to the complaint, arguing that the differing barcodes on the stickers on the different copies of the Note mean that the copy attached to BNYM's complaint is inauthentic.

**{16}** To make a prima facie showing that it was entitled to summary judgment, BNYM had to establish standing, i.e. that it possessed the Note at the time of filing and had the right to enforce the Note, and that Barnes was in default. *See Los Alamos Nat'l Bank v. Velasquez*, 2019-NMCA-040, ¶ 14, 446 P.3d 1220. BNYM asserted it was the holder, attached a copy of the Note indorsed in blank to its complaint, and asserted that Barnes was in default. BNYM also filed the Smith and Nesbitt affidavits, which are both based on the affiants' personal knowledge and reflect that BNYM possessed the Note at the time of filing. Thus, BNYM established a prima facie showing that it was the holder of the original Note, shifting the burden to Barnes to demonstrate a genuine issue of material fact. *See Velasquez*, 2019-NMCA-040, ¶ 17 (holding affidavits attesting to the bank's possession of note were sufficient to establish prima facie showing of standing).

**{17}** Barnes states that "[i]f the trier finds [OrigUnrc] means 'original unreceived,' it can rule for Barnes." Nevertheless, regardless of the meaning of "OrigUnrc," Barnes has failed to demonstrate that the transmittal document creates a genuine issue of material fact regarding BNYM's possession of the original Note at the time of filing. The transmittal document containing the "OrigUnrc" code is dated November 23, 2011, and a separate transmittal document reflects that BNYM received the original Note on November 29, 2011, which Nesbitt confirms in her affidavit. Therefore, in viewing the evidence in the light most favorable to the nonmoving party, we cannot reasonably infer that the transmittal record and the "OrigUnrc" code create a genuine issue regarding BNYM's possession of the Note. "When disputed facts do not support reasonable inferences, they cannot serve as a basis for denying summary judgment." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280.

**{18}** Similarly, we are not persuaded by Barnes' arguments that the different copies of the Note in the record create a genuine issue regarding BNYM's possession of the original Note. It is true that the copies contain differing barcodes, with one number being redacted. However, outside of the redaction, the Notes are otherwise identical. We also

---

3Barnes originally raised this issue in a motion to compel discovery, and alerted the district court to his motion to compel discovery regarding this code in one of his affidavits responding to BNYM's summary judgment. The district court resolved this issue when it denied Barnes' motion for reconsideration. However, because Barnes raised this issue in response the BNYM's motion for summary judgment, we review it de novo. *See Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶¶ 8-9, 335 P.3d 1243 (addressing a patient's response to hospital's motion for summary judgment and reviewing de novo).

note that the document was redacted lightly and it is possible to read through the redaction. Reading through the redaction shows that both versions of the Note are identical. We therefore cannot reasonably infer that these slight differences create a genuine issue of material fact regarding BNYM's possession of the Note at the time of filing. *See id.*

## B.    Real Party in Interest

**{19}**    Barnes next argues that BNYM is not the real party in interest because it does not own the right to foreclose or possess the authority to discharge Barnes from the liability asserted. We disagree.

**{20}**    It is well-settled in our State that "[e]very action shall be prosecuted in the name of the real party in interest; but . . . [a] trustee of an express trust . . . or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought[.]" Rule 1-017(A) NMRA. As addressed above, the UCC authorizes the person in possession of the instrument to enforce the instrument. Section 55-3-301; *see also Johnston*, 2016-NMSC-013, ¶ 14.

**{21}**    Barnes argues that because BNYM is an indenture trustee, as opposed to an express trustee, it has limited power to enforce the trust per the terms of the Pooling and Servicing Agreement (PSA) and that, per the terms of the PSA, only the master servicer has the power to foreclose. A "trust indenture" contains the terms and conditions governing a trustee's conduct and the trust beneficiaries' rights. *See, e.g.*, *Bolton v. Bd. of Comm'rs of Valencia Cnty.*, 1994-NMCA-167, ¶¶ 6-8, 119 N.M. 355, 890 P.2d 808 (addressing terms of trust indenture); NMSA 1978, § 6-21-13 (1992) (explaining how bonds may be secured by trust indenture). An "express trust" is "one that is created by the manifest intention of the settlor to create it." *Tartaglia v. Hodges*, 2000-NMCA-080, ¶ 58, 129 N.M. 497, 10 P.3d 176. Express trusts may be created through words or through writing, deed, or will. *Aragon v. Rio Costilla Coop. Livestock Ass'n*, 1991-NMSC-057, ¶ 7, 112 N.M. 152, 812 P.2d 1300. Thus, an indenture trustee is not necessarily distinct from an express trustee, for an express trust created through writing may contain language that limits the trustee's power to act.[4]

**{22}**    Although Barnes contends that only the Master Servicer has the power to foreclose under the terms of the PSA, given the conspicuous absence of several sections of the PSA in the record, we cannot meaningfully review the PSA to determine if Barnes' assertions are correct. "It is the duty of the appellant to provide a record adequate to review the issues on appeal." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 65, 146 N.M. 853, 215 P.3d 791. Barnes, having

4To support his argument, Barnes cites cases from jurisdictions outside New Mexico. *See generally Navarro Savs. Ass'n v. Lee*, 446 U.S. 458 (1980); *CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497 (7th Cir. 2010); *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, 2019-Ohio-388, 129 N.E.3d 1085. BNYM responds by citing different cases from jurisdictions outside New Mexico. *See generally LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 180 F. Supp. 2d 465 (S.D.N.Y. 2001); *LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618 (D. Md. 2002). Without a full copy of the PSA before us, we cannot say if the cases cited by either party are persuasive.

only filed portions of the PSA below, has not provided us with an adequate record for review. Without the ability to review the entire PSA, we cannot rely on his assertion that BNYM does not have the power to foreclose. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record."). "Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the trial court's decision, and the appellate court will indulge in reasonable presumptions in support of the order entered." *Sandoval*, 2009-NMCA-095, ¶ 65 (internal quotation marks and citation omitted). We therefore are not persuaded by Barnes' assertion that the PSA somehow limits or deprives BNYM from bringing a foreclosure action.

## C.     Countrywide's Alleged Material Breaches

**{23}**     Barnes next argues that BNYM had no mortgage to foreclose on because Barnes terminated his Mortgage in 2009 due to Countrywide's material breach of its terms. *See KidsKare, P.C. v. Mann*, 2015-NMCA-064, ¶ 20, 350 P.3d 1228 ("A material breach of a contract excuses the non-breaching party from further performance under the contract."). Barnes asserts that Countrywide materially breached the terms of the Mortgage for four reasons: (1) Countrywide did not properly respond to his three qualified written requests (QWRs), specifically never responding to his September 2007 and May 2008 QWRs, and responding to his October 2007 QWR outside the statutory deadline; (2) Countrywide prevented Barnes from becoming current on his mortgage loan by rejecting payments that would have brought the loan current in error, by applying partial payments to late fees in violation of the terms of the mortgage, and by holding funds in suspense in violation of the terms of the mortgage; (3) Countrywide charged him improper fees, including fees for inspections it did not conduct, fees for inspecting two properties despite Barnes only securing his loans with one property, fees for multiple inspections in one month, and improper late fees generated by failing to respond to his QWRs; and (4) Countrywide made a bad faith exercise of discretion by not applying his prepayments on the loan in order to prevent default. BNYM responds that Barnes failed to demonstrate that Countrywide materially breached the Mortgage or that he has made a payment on the loan since 2008, meaning that Barnes remains in default and has failed to rebut BNYM's prima facie showing.

**{24}**     In support of his assertions of breach, Barnes submitted an affidavit detailing his view of the events that transpired between himself and Countrywide. Barnes attached several communications between himself and Countrywide concerning his Mortgage, but none of these communications reflect that either Countrywide or BNYM breached or materially breached the Mortgage.

**{25}**     When interpreting a contract, "we view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651. "The language of the contract must be given its plain, grammatical meaning unless it appears that the intention of the parties would be

defeated." *Brown v. Fin. Savs.*, 1992-NMSC-025, ¶ 5, 113 N.M. 500, 828 P.2d 412. The plain language of the Mortgage does not indicate that Countrywide committed a breach.

**{26}** For instance, Barnes argues that Countrywide breached the contract by misapplying and rejecting payments that prevented him from becoming current on his mortgage, holding funds in suspense, paying late fees in violation of the terms of the Mortgage, and failing to apply prepayments to satisfy his late payments. But under the terms of the Mortgage, if the lender receives a payment for a delinquent periodic payment which includes enough to pay late fees, the lender may apply the payment to the delinquent payment and the late charge. The lender may also return any payment or partial payment if such payment is insufficient to bring the loan current or hold such payment in suspense until the borrower makes payments to bring the loan current. Thus, when a borrower falls behind on their payments, the lender has greater discretion as to how subsequent payments are applied, and exercising this discretion does not constitute a failure to perform. Further, the lender may only apply voluntary prepayments as specified in the Note, and the Note only allows the holder to apply prepayments to the principal amount due or accrued and unpaid interest. And, as the district court observed, the rejected payments relate to Barnes' home equity line of credit, not his Mortgage, and that loan is not the subject of this litigation.

**{27}** Though Barnes contends that Countrywide charged him improper fees, the plain language of the Mortgage and Note allow the lender to charge such fees. The Mortgage allows the lender to make reasonable inspections of the property, states that taxes, assessments, and fines that can take priority over the mortgage instrument must be paid by the borrower, and allows the lender to collect all expenses incurred in defending its interest in the secured property if the loan is accelerated. The Note allows the lender to charge late fees if the borrower does not remit their monthly mortgage payment within fifteen calendar days of its due date. Barnes never demonstrated that the late fees or inspection fees charged by Countrywide were unauthorized, illegal, or otherwise imposed in bad faith as opposed to fees permitted to be charged under the terms of the Mortgage.

**{28}** In another attempt to establish a breach, Barnes asserts that Countrywide failed to respond and responded late to requests he characterizes as QWRs. However, a QWR is a specific mechanism under the Real Estate Settlement Procedures Act (RESPA), wherein a borrower can assert errors on their account and request payment history. 12 U.S.C. § 2605(e)(1)(B)(i), (ii). The September 2007 letter explains his late payment history and requests payment assistance, but does not request payment history records and does not assert that there is an error on his account. Barnes' October 2007 letter to Countrywide similarly requests payment assistance, but does not allege error on his account or request payment history. Thus, neither of these letters could be considered QWRs under RESPA, meaning Countrywide was not required to respond to them.[5] *See generally* 12 U.S.C. § 2605(e)(1), (2) (addressing what constitutes a QWR and what action a lender must take after receiving a QWR). Only

---

[5]Though Countrywide was not required to respond to Barnes' October 2007 letter, it did do so by reviewing his eligibility for payment assistance.

Barnes' May 2008 letter, which asserts Countrywide has charged fees in error and requests an account history, could be considered a QWR. Countrywide did respond to this QWR in July 2008, further demonstrating that Countrywide did not breach the Mortgage. Therefore, we conclude that no breach of Mortgage, much less a material breach, occurred.

## D.    2019 Bayview Letter

**{29}**    Barnes next argues that he was not in default as evinced by a letter he received from Bayview after the district court's entry of default and summary judgment in BNYM's favor. Because this letter states that Barnes' "loan is at risk of going into default[,]" Barnes argues this is evidence his loan was not presently in default. BNYM responds that this letter does not change that Barnes remains in default and has not made a payment on his mortgage loan since 2008.

**{30}**    To support this response, BNYM directs this Court to an affidavit it submitted to the district court from Juan Pesantes, a Bayview litigation manager, who reaffirmed that Barnes was in default and that the letter was not meant to imply otherwise. The affidavit states that the letter Barnes received was a form letter that is sent when a borrower has one or more outstanding mortgage payments and a specialized team has been assigned to the loan to help the borrower get back on track with their payments. Because this standardized letter is sent when payments are outstanding, regardless of whether the loan is in default, the letter does not specify whether the loan is presently in default.

**{31}**    The district court agreed with BNYM, finding there was no genuine issue of material fact as to the Bayview letter and Barnes had not produced admissible evidence that he had cured his established default. We affirm the district court's finding. The letter from Bayview states "one or more payments are now outstanding which means that your loan is at risk of going into default[.]" That reflects that Barnes is not current on his loan payments, but is not an affirmative representation of whether his loan is in default. A few months later, Barnes received another letter from Bayview that informed him the mortgage loan was due for his April 1, 2008 payment, listed the current total unpaid principal, interest, and other fees, and stated the figures on the loan were current to May 14, 2019, supporting BNYM's position that Barnes had failed to demonstrate he was no longer in default.

**{32}**    Indeed, while Barnes argues he was not in default, he has failed to support this contention with admissible evidence both in the district court and before this Court. Barnes submitted two affidavits that were deemed to be his response to BNYM's motion for summary judgment. Following the district court's entry of summary judgment in BNYM's favor, Barnes filed a motion to dismiss based on the Bayview letter which also included a supporting affidavit. None of these affidavits or their attached exhibits controvert BNYM's initial showing that Barnes' loan was in default.

## E.    Barnes' Affirmative Defenses

**{33}** Finally, Barnes argues that BNYM failed to dispute his eighth, ninth, and twelfth affirmative defenses. However, BNYM was only required to make a prima facie case on its claim. "[O]nce the plaintiff-movant makes a prima facie case on its claim alone, the defendant bears the burden of demonstrating a genuine issue of material fact regarding any affirmative defense that it relies on to oppose the entry of summary judgment." *Fed. Nat'l Mortg. Ass'n ("Fannie Mae") v. Trissell*, 2022-NMCA-001, ¶ 18, 503 P.3d 381. It was Barnes' burden to demonstrate that his affirmative defenses created a genuine issue of material fact, which he failed to do in either of his affidavits responding to BNYM's motion for summary judgment.

**{34}** We therefore affirm the district court's grant of default and summary judgment to BNYM. We now address the final issue before this Court, the award of attorney fees and costs to BNYM.

## II.     Attorney Fees and Costs

**{35}** "New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney[] fees." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted). "Authority can be provided by agreement of the parties to a contract." *Montoya v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 6, 110. N.M. 128, 793 P.2d 258. "The scope of that authority is defined by the parties in the contract, and a determination of what fees are authorized is a matter of contract interpretation." *Id.*

**{36}** Here, both the Note and the Mortgage grant BNYM the right to seek attorney fees, and in accordance with that grant, BNYM moved for attorney fees and costs following the entry of summary judgment and default in its favor. Following its award of default and summary judgment, the district court found that BNYM was entitled to attorney fees, ultimately awarding BNYM $34,855.88 in attorney fees and costs.

**{37}** Barnes does not contest BNYM is entitled to seek attorney fees and costs "if it prevails on the merits." Instead, Barnes challenges the award, arguing that BNYM failed to delineate specific costs despite the trial court ordering it to do so. Barnes contends that the district court should have delineated allowable costs when it awarded fees to BNYM. We review an award of attorney fees for an abuse of discretion. *Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 21, 135 N.M. 607, 92 P.3d 53.

**{38}** Barnes misunderstands the district court's order to delineate fees and costs. At the first presentment hearing, the district court ordered counsel for both parties, not just BNYM's counsel, to review BNYM's time entries attached to its motion for attorney fees and costs and determine which entries were allowable. The district court required counsel for each party to review BNYM's time entries together and delineate the specific items allowable, and come up with a fee total. BNYM presented an extensive list of time entries, which delineate the time spent and tasks undertaken by its counsel. Barnes had

the opportunity to submit his own proposed fees and costs, but failed to either do so or confer with BNYM about the fee award.

{39}   Finally, Barnes' assertion that the district court abused its discretion by making an award of fees without delineating the allowable items is without merit. The district court's oral award at the first presentment hearing and its subsequent written order reflect, in detail, which motions it awarded fees on, the basis for awarding fees, and what items could be included in those fees. We therefore conclude that the district court did not abuse its discretion and uphold its award of $34,855.88 in attorney fees and costs to BNYM.

**CONCLUSION**

{40}   For the forgoing reasons, we affirm the district court's grant of summary and default judgment to BNYM. We also affirm the district court's award of attorney fees and costs to BNYM.

**{41}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**KATHERINE A. WRAY, Judge**